# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

LARRY LEROY JOHNSON, JR.,              )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          No. CIV 08-372-FHS-SPS
                                       )
JANE STANDIFIRD, et al.,               )
                                       )
                    Defendants.        )

## OPINION AND ORDER

This action is before the court on Defendants Jane Standifird, Dr. Wit Chainakul, Phillip Langston, Barbara Carswell, Phillip Washburn, Anita Thomas, Dr. Raymond Stewart, and Carolyn Cooper's motion to dismiss or for summary judgment and the court's own motion to consider dismissal of the case as frivolous under 28 U.S.C. § 1915. The court has before it for consideration plaintiff's complaint [Docket #1], the defendants' motion [Docket #43], the parties' responses and replies [Docket # 53, #56, #57, #67, #68], and two special reports prepared by the Oklahoma Department of Corrections (DOC) the at the direction of the court [Docket #41 and #42], in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at John Lilley Correctional Center in Boley, Oklahoma (JLCC), brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at JLCC and Jackie Brannon Correctional Center (JBCC) in McAlester, Oklahoma. The defendants are Jane Standifird, JLCC Acting Warden; Dennis Cotner, DOC Medical Services Administrator; Barbara Carswell, JBCC Medical Administrator; Phillip Langston, JLCC

Heath Service Administrator; Dr. Norman McAlester, JBCC Physician; Dr. Stewart, Oklahoma State Penitentiary Physician; Dr. Phillip Washburn, JBCC Physician; Dr. Wit Chainakul, JLCC Physician; Dr. John Hildenbrand, Physician at the University of Oklahoma Orthopedic Clinic; Anita Thomas, R.N., JLCC Head Nurse; and Carolyn Cooper, R.N., JLCC Nurse.[1,2]

Plaintiff alleges in Count I that the DOC medical care system is systematically deficient, resulting in delays in treatment of serious medical needs for months or years. He claims in Count II that the defendants have been deliberately indifferent to his serious medical needs. In Count III plaintiff asserts a constitutional claim under his First Amendment rights of 'freedom of speech, freedom of expression, and freedom to utter." He also asserts claims under the Fifth, Eighth, and Fourteenth Amendments in Count III.

Plaintiff has submitted his detailed medical history beginning in October 2003, when he fell and injured his right hip, and including a second fall on May 10, 2004. He alleges the defendants have failed to advise him of test results showing significant degenerative changes in his hip joint and osteoarthritis in his right hip. His symptoms increased to include severe pain, great difficulty walking, numbness, muscle spasms, loss of hand dexterity, and difficulty breathing. Although he has received medical examinations, treatments, and

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

[2] Defendants Dennis Cotner, Dr. Norman McAlester, and Dr. John Hildenbrand have not been served.

surgery, he has been transported in restraints and forced to endure unnecessary pain. The defendants allegedly have not accommodated his medical conditions or provided appropriate physical therapy. In addition to monetary damages, he requests relief in the form of surgeries to repair his right hip and left knee, along with pain management, physical therapy, and all treatments and medications deemed necessary by the surgeon. He asks the court to direct the DOC to develop a plan to ensure prompt delivery of health care for inmates. He also is requesting a survey of all facilities to determine how many inmates are waiting for hip and knee surgery and the length of time they have been waiting.

## Counts I and II

Plaintiff alleges the defendants have acted with deliberate indifference to his health needs and have denied him adequate medical treatment. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983. (Citations and footnotes omitted).

*Id*. at 104-05.

The record shows that plaintiff was housed at Jackie Brannon Correctional Center from April 28, 2005, through June 21, 2006. On May 2, 2005, he submitted a request for medical services complaining of a painful, infected toe on his right foot. He saw Dr. Norman McAlester the next day and received medication and instructions for caring for the toe. On

May 19, 2005, he submitted another medical request for complaints concerning his lower back, right hip, and left knee and stating he was losing the feeling in his hands and feet. He saw Dr. McAlester on May 23, 2005, and the doctor ordered an X ray of plaintiff's right hip, prescribed Elavil, increased hydrochlorothiazide, and gave plaintiff knee and wrist braces. Plaintiff's right hip was X rayed on June 1, 2005, and Dr. McAlester noted there was significant degenerative changes and degenerative osteoarthritis. The next day Dr. McAlester wrote orders restricting plaintiff's walking, bending, and lifting. Plaintiff's Activity/Work Form was revised and forwarded to his units to notify them of the restrictions.

On August 4, 2005, plaintiff saw Dr. McAlester again, and X rays of his left knee were ordered. The August 9, 2005, X rays resulted in a diagnosis of degenerative arthritis. Plaintiff submitted a medical request on August 15, 2005, and he received a two-month prescription for naproxen on August 18, 2005.

On September 18, 2005, plaintiff submitted a Request to Staff to Barbara Carswell, JBCC Medical Administrator, stating he had slipped in the shower at Lawton Correctional Facility in May 2004. Plaintiff claimed that before falling he was an avid jogger, but since the fall he had been in constant pain. He complained there was no stability in his knee, causing him to fall on numerous other occasions, including when he injured his hip. He asked to have another evaluation, preferably by a joint specialist. Ms. Carswell responded on September 21, 2005, advising that the physician would have to request an orthopedic consultation and suggesting that plaintiff submit a sick call request.

On September 22, 2005, plaintiff submitted a request for medical services, stating he had lost 80% of the use of his left leg because of his knee. Dr. Nicholson examined plaintiff on September 26, 2005, gave him an injection in his knee, prescribed knee supports and a

cane, and requested an outside orthopedic consultation. The orthopedic consult request was entered into the system on October 6, 2005. Dr. Cooper saw plaintiff on December 7, 2005, ordered additional X rays of plaintiff's hip and left leg, and continued the naproxen.

Plaintiff continued to be seen by doctors and given pain medication while waiting for the orthopedic consultation, and Dr. Nicholson followed up on the request in January and February 2006. On March 8, 2006, Dr. Phillip Washburn ordered a low spine X ray and made another request for an outside orthopedic consultation, this time with a high priority code. Plaintiff submitted a request for medical services on March 12, 2006, complaining of shortness of breath and chest constriction, but he did not show up for his medical appointment on March 14, 2006

Plaintiff's March 22, 2006, request for medical services stated he had numbness in his body, loss of dexterity in his hands, and difficulty breathing. He saw Dr. Stewart on March 24, 2006, and the naproxen was continued with a follow-up with Dr. Washburn the next week. On March 30, 2006, Dr. Washburn examined him and requested a neurological consultation as soon as possible. When Dr. Washburn learned that the OU Medical Center could not see plaintiff until July 2006, Dr. Washburn obtained permission to have plaintiff treated by Dr. Lutton, a local outside specialist who examined plaintiff on May 3, 2006, and recommended dorsal and cervical plain films and an MRI examination. In accordance with DOC policy, plaintiff was transported to his outside appointment in full restraints. Because of plaintiff's risk of falling, on May 5, 2006, he was offered a wheelchair or a walker, and he accepted the walker. His meals were delivered to his bunk, and he was not supposed to leave his unit unless he could ride in a van.

Plaintiff was issued a wheelchair on June 1, 2006. The MRI of his spine was

completed on June 2, 2006, at the OU Medical Center, and Dr. Washburn reviewed the results. The MRI report indicated a congenital fusion of the vertebrae, which took medical priority over his hip and knee problems. Plaintiff was issued a cervical collar on June 13, 2006.

Plaintiff was seen at the JBCC medical clinic 15 times from April 28, 2005, to June 14, 2006, and he had numerous radiological tests performed on his hip, knee, and spine. He was placed on medical restrictions, was referred to two different outside specialists, saw one outside specialist, received prescriptions for pain medication, went to an outside radiologist for testing, and received knee braces, a cane, a walker, and a cervical collar.

On June 23, 2006, plaintiff was transferred to JLCC, and he saw a neurologist at the OU Medical Center on June 26, 2006. The neurologist recommended surgery for plaintiff's congenital spinal fusion, which was performed on July 18, 2006. Plaintiff then was transferred to Lindsey Hospital for follow-up care until July 25, 2006. From July 25, 2006, through December 2006, plaintiff went to OU for follow-up visits for his spinal surgery. Plaintiff also saw Defendant JLCC physician Dr. Wit Chainakul during this time, but his care was directed by the outside surgeon.

In December 2006 DOC medical staff again requested an orthopedic appointment for plaintiff's hip and knee, and he was seen by doctors and given medication while waiting for an orthopedic consult. On May 18, 2007, plaintiff went to his appointment at the OU Medical Center Orthopedic Clinic and was diagnosed with degenerative changes in his knee, degenerative disease in his right hip, and end-stage osteoarthritis. Plaintiff alleges Dr. Hildenbrand at OU told him that a dislocation probably had caused the arthritis to spread so rapidly. Plaintiff also allegedly told Dr. Hildenbrand that his hip had caused him to fall, and

the fall caused him to injure his spinal cord. Plaintiff claims that Dr. Hildenbrand said there was a long waiting list for hip surgery. The record, however, indicates Dr. Hildenbrand determined that because of plaintiff's young age, surgery should be postponed until the condition severely affected the quality of his life. Dr. Hildenbrand placed plaintiff on a waiting list and ordered a follow-up consultation. In April 2008 plaintiff's surgery priority status was changed from low to medium at the request of Dr. Chainakul. Defendant Langston, JLCC Heath Service Administrator, investigated plaintiff's medical complaints and relied on the medical reports and plaintiff's OU physician's recommendation. JLCC medical staff made requests in July 2008 and November 2008 to have plaintiff's surgery scheduled. Plaintiff is on medication and is treated in accordance with the recommendations from his OU orthopedic specialist. The DOC staff do not control the surgeon's schedule. Plaintiff's surgical status as medium priority is a matter of medical opinion that his condition does not warrant immediate surgery.

Plaintiff also alleges Defendants Nurse Anita Thomas and Nurse Carolyn Cooper have been deliberately indifferent to his serious medical needs. Defendant Thomas allegedly issued him a wheelchair that was inadequate to protect him from additional harm, and Defendant Cooper assigned him a general population bunk without handicapped access. The record indicates Nurse Cooper performed plaintiff's initial health screening at JLCC on June 23, 2006, and noted he required a lower bunk and was unable to work. While DOC inmates may request special housing accommodations, the special report shows the nurses do not control housing assignments. In addition, there is nothing in the record to show he was denied a requested handicap accommodation or that he suffered any substantial harm.

When plaintiff was transferred to JLCC, he was provided a wheelchair, and after he

was discharged from Lindsey Hospital, he walked without difficulty. Because of his progress, he was prescribed a walker that was issued by Nurse Thomas on August 29, 2006, in accordance with the doctor's orders. Plaintiff never pursued any administrative remedies about the walker or wheelchair.

Plaintiff also has sued several other defendants, Defendants JLCC Acting Warden Jane Standifird, JBCC Medical Administrator Barbara Carswell, and JLCC Health Service Administrator Phillip Langston. Plaintiff has alleged no personal participation of Warden Standifird with regard to his medical care or grievance review. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430 (10th Cir. 1992). Further, "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

As for Defendants Carswell and Langston, these defendants relied upon DOC medical professionals and plaintiff's medical records in responding to plaintiff's medical problems. Carswell and Langston investigated plaintiff's medical issues and determined he was regularly seen by doctors, was being prescribed pain medication, had seen a specialist at OU, and was on a waiting list for surgery. The medical staff regularly checked with the OU Medical Center regarding plaintiff's surgery status. It is reasonable for non-medical personnel to defer to the medical professionals' opinions. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005).

After careful review of the record, the court is of the view that the acts complained of do not show deliberate indifference to plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick

calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). To the extent plaintiff is complaining about the inadequacy of medical care provided, the court finds plaintiff is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein.

Regarding the delay in plaintiff's treatment, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). The record clearly shows that the defendants have prioritized plaintiff's medical needs, have provided continuing care, and have authorized orthopedic surgery. He was designated as having a medium priority for surgery, which is a matter of medical opinion that his condition does not warrant immediate surgery. The court, therefore, finds no evidence of deliberate indifference to plaintiff's serious medical needs. Counts I and II fail.

## Count III

Plaintiff alleges in Count III that he has been denied his First Amendment rights of free speech, free expression, and freedom to utter, as well as his due process rights under the Fifth and Fourteenth Amendments and his Eighth Amendment protection from cruel and unusual punishment. He argues that being placed on the waiting list for surgery is not a fair procedure, and having to wait for hip and knee surgery has caused the wanton infliction of pain and intentional infliction of emotional distress. He contends he has been denied his

right to "walk like a free man," and even sitting in his wheelchair is a constitutional deprivation. Plaintiff further asserts the DOC has established written standards for medical care, but he has been denied due process through the denial of necessary surgery.

Plaintiff argues his limited mobility and the delay in scheduling his surgery violates the Due Process Clauses of the Fifth and Fourteenth Amendments. The court finds, however, that his claim should be characterized as an Eighth Amendment issue, as his claims in Grounds I and II were analyzed. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). A delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Id*. at 1276. There is no question plaintiff suffers from a serious medical condition requiring treatment. The defendants have acknowledged his problems and his need for surgery, but he is not considered to require immediate surgery for the reasons set forth in Counts I and II. In the interim, he is being treated with physician visits, medications, and equipment to assist him. The court, therefore, finds there is no constitutional violation.

Plaintiff's First Amendment argument is more difficult to understand. He apparently is claiming there are presumed damages if a doctor fails to disclose information or a diagnosis to a patient. He does not allege or show how he has been denied his right of free speech. He cites *Bell v. Little Axe Indep. Sch. Dist. No. 70 of Cleveland County*, 766 F.2d 1391 (10th Cir. 1985), in support the proposition that damages may be presumed and awarded for First Amendment violations. The *Bell* case, however, concerned religious meetings and Bible distributions at public schools, and is not related to plaintiff's claims.

Finally, the court notes that plaintiff's response to the defendants' motion to dismiss or for summary judgment was presented as a response or, in the alternative, a motion for

summary judgment [Docket #53]. The document, however, argues there are disputed issues of material fact that could preclude summary judgment. *See* Fed. R. Civ. P. 56(c)(2). Therefore, is has been construed only as a response to the defendants' motion to dismiss.

Based on the foregoing reasons the court finds the allegations in plaintiff's complaint are vague and conclusory, and the allegations do not rise to the level of a constitutional violation. The Tenth Circuit Court of Appeals has consistently held that bald conclusions, unsupported by allegations of fact, are legally insufficient, and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing. *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990); *Lorraine v. United States*, 444 F.2d 1 (10th Cir. 1971). "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) (citing *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980)).

The court authorized commencement of this action *in forma pauperis* under the authority of 28 U.S.C. § 1915. Subsection (e) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. *Nietzke v. Williams*, 490 U.S. 319 (1989); *Yellen v. Cooper*, 828 F.2d 1471, 1475 (10th Cir. 1987).

**ACCORDINGLY,** this action is, in all respects, DISMISSED as frivolous.

IT IS ORDERED this 31st day of March, 2010.

Frank H. Seay
United States District Judge